FILED
2010 Jul-21 AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TERRY E. HORTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-G-1487-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Terry E. Horton, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether he has a severe impairment;

(3) whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

> (5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 13].  The ALJ found the plaintiff unable to perform his past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony."  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). This same standard applies to testimony about other subjective symptoms. Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies he suffers from pain or other subjective symptoms at level that would

4

prevent work and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's testimony about pain or other subjective symptoms, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's testimony, or if his reasons are not supported by substantial evidence, the testimony of the plaintiff about his subjective symptoms must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.  The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as

true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling.  In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)**.**

## DISCUSSION

ALJ Digby found that the plaintiff "has the following severe impairments: degenerative disc disease with protruding disc at L4-5, hypertension, non-ischemic cardiomyopathy, and borderline intellectual functioning. . . ." [R. 13].   The ALJ found that the plaintiff's degenerative disc disease, hypertension, and cardiomyopathy are severe in combination, but not severe enough to meet or medically equal the Listings.  [Id.]. Additionally, he found that the plaintiff's borderline intellectual functioning "does not meet or medically equal the criteria of listing 12.04."  [Id.].  Accordingly, the ALJ found

that the plaintiff has the residual functional capacity to perform a reduced range of light work.  [Id.].

Alejandro Vasquez, M.D., the plaintiff's treating cardiologist, noted on May 11, 2006, that the plaintiff had been hospitalized for non-ischemic cardiomyopathy in April 2006 for acute congestive heart failure.  [R. 255].  Dr. Vasquez reported that the plaintiff had a severely depressed LV ejection fraction of five to 10 percent.  [Id.].  On June 26, 2006, an echocardiogram revealed that his left ventricular ejection fraction had improved slightly to 15 percent, but Dr. Vasquez noted that the plaintiff "continues to have dyspnea on exertion (3 to 4 minutes)."  [R. 252].  An October 26, 2006, treatment note stated that the plaintiff continued to improve, but also that the plaintiff "continues to be dyspneic on minimal exertion."  [R. 250].  By February 27, 2007, the plaintiff's LV ejection fraction had improved to 30 to 35 percent.  [R. 304].  On March 10, 2008, Dr. Alejandro noted that the plaintiff had chronic shortness of breath on maximal exertion. [R. 300].  An electrocardiogram showed sinus rhythm with left ventricular hypertrophy and repolarization changes.  [R. 300].  On August 26, 2008, the plaintiff complained to Dr. Vasquez of worsening generalized fatigue and dizziness, although he admitted to being "fairly active in his yard and he believes that his symptoms have worsened since he has become more physically active."  [R. 298].

The Listing for chronic heart failure, 20 CFR §404.1525, Appendix 1, ¶4.02(A)(1), states that presumptive disability is established if chronic heart failure is medically documented by the existence of systolic failure with left ventricular end

diastolic dimension greater than 6.0 cm or an ejection fraction of 30 percent or less during a period of stability. From 2006 to 2008, the best left ventricular ejection fraction demonstrated by echocardiogram was 30 to 35 percent. At worst, the plaintiff's left ventricular ejection fraction was five to 10 percent. Had the ALJ properly considered this evidence, he would have concluded that this 52-year-old plaintiff's heart disease would limit him to no more than sedentary work, and, applying the Medical/Vocational Guidelines, he would have found the plaintiff disabled.

The plaintiff also suffers from degenerative disc disease. An April 14, 2003, MRI of his lumbar spine revealed a central paracentral left disc protrusion at L4-5 with effacement of the thecal sac. [R. 175]. The plaintiff's treating orthopedic surgeon, James C. O'Brien, M.D., noted that on May 11, 2004, the plaintiff reported having "good days and bad, but mostly bad." [R. 173]. Dr. O'Brien prescribed Lorcet Plus on numerous occasions for pain. [R. 173-174]. On December 13, 2004, the plaintiff reported that the Lorcet was no longer effective and Dr. O'Brien prescribed Mepergan Forte. [R. 171]. Dr. O'Brien stated, "<u>I do not expect his symptoms to improve</u>." [<u>Id.</u>](emphasis added). Dr. O'Brien continued to see the plaintiff on an almost monthly basis through October, 2005. [R. 167-170]. On October 12, 2005, he restricted the plaintiff to not lifting or carrying more than 10 pounds, and no pushing or pulling. [R. 167].

Additionally, on November 16, 2004, Dr. O'Brien completed a Physical Capacities Evaluation which limited the plaintiff to sitting for two hours, standing for two

hours, and walking for two hours for a total of six hours in an eight-hour workday. [R. 290]. He estimated that the plaintiff could lift and carry up to 10 pounds occasionally, but never more than that. [Id.]. The ALJ does not state what weight, if any, he gives to the Residual Functional Capacity Assessment by the plaintiff's treating orthopedic surgeon. However, he does state that:

> Considerable weight is also given to the opinion of the state agency regarding the claimant's physical abilities. That assessment showed the claimant would be able to perform a limited range of work activity at the light level of exertion. This is consistent with the claimant's impairments and consistent with the findings shown in the consultative physical examination performed by Dr. Gill in October 2006. That exam showed the claimant had a normal gait and walked unassisted. His upper extremities appeared normal and symmetrical and he used his hands and arms normally with no limitations. He had full range of motion in his joints and his muscle strength was 5/5. <u>He complained of some discomfort with lumbar movement, but his back looked normal with no tenderness</u>.
>
> \*       \*       \*
>
> Dr. Gill did not opine the claimant would have significant limitations.

[R. 16].(emphasis added) The ALJ's statement "but his back looked normal" to support a credibility finding that the plaintiff's back pain was not as intense and limiting as the plaintiff claimed is absurd. The April 14, 2003, MRI showed a central paracentral left disc protrusion at L4-5 with effacement of the thecal sac. Additionally, while the ALJ states that "Dr. Gill did not opine the claimant would have significant limitations," Dr. Gill also did not state that the plaintiff had no limitations. Moreover, Dr. Gill's assessment was "low back pain, chronic." [R. 240]. The medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain

allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

On October 24, 2006, the plaintiff was seen by Jon G. Rogers, Ph.D., at the behest of the Commissioner for a Psychological Evaluation.  Dr. Rogers noted:

> During the day he reported engaging in the following activities:  personal hygiene, watching TV, and housecleaning.  His daughter washes the clothes, cooks the meals, washes the dishes, and cleans the house; and Mr. Horton pays the bills.
>
> Mr. Horton reported he has a few friends with whom he visits.  Hobbies and interests include fishing, watching TV, and playing cards.
>
> *     *     *
>
> Mr. Horton's affect was restricted.  His mood appeared anxious.  He reported that most of the time he feels "all right, except for pain."
>
> *     *     *
>
> Mr. Horton is able to function independently.  The quality of his daily activities is below average.  the medical evidence of record provided by DDS was reviewed and those findings were considered in the overall assessment of the patient.  He presented on this testing occasion stating that he cannot work "because of lower back pain and I get short of breath.  I cannot sit or walk or bend over too much.  My breath is short in my chest."  He reported depression is a factor in his employability, "I can't do what I'd like to do.  I have trouble sleeping."

[R. 243-245].  Dr. Rogers diagnosed:  Pain Disorder Associated with Psychological Factors and His General Medical Condition; Depressive Disorder NOS; insomnia, high

11

blood pressure, and daily pain (8/10) in his back and lower left side; and psychological stress stemming from his difficulties in relationship to his occupational problems. {R. 245]. He assessed the plaintiff's Global Assessment of Functioning at 51[1]. [Id.].

The activities of daily living reported by the plaintiff to Dr. Rogers do not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)" DSM-IV-TR at 34 (emphasis in original).

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

Had the ALJ properly considered the plaintiff's heart disease, degenerative disc disease and mental status in combination, he should have found the plaintiff disabled. When a claimant has multiple impairments they must be considered in combination.

> [A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

13

Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

At the hearing, the plaintiff testified that he has shortness of breath and tires easily because of his heart disease. [R. 41]. He testified that because of his heart and back, during an average day he lies down for 45 minutes to an hour. [R. 44]. The vocational expert testified that the plaintiff does not have skills which transfer to sedentary work. [R. 51]. She also testified that an employer would not tolerate absences of more than two days per month, and would not tolerate an employee lying down during the workday for 45 minutes to an hour. [R. 52]

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 21 July 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.